services to his attorneys, they cannot be allowed against the estate to the assignee for individual services as trustee. In re Rutledge, 162 N. Y. 31, 56 N. E. 511. After paying the contestant's attorney, Mr. Fuess, the total sum of $65 for attorney's fees and actual disbursements, and the attorney for the National Wall-Paper Company the total sum of $20, which must also include actual disbursements, the balance, $553.11, must be distributed among the creditors.

The accounting so charged, surcharged, and allowed must be regarded as the final conclusion of this court, and the distribution among the creditors must be pro rata, computing interest thereon as under the stipulation made in open court.

The decree of distribution may be drawn in accordance with this opinion.

(30 Misc. Rep. 691.)

### MARTIN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Special Term, Onondaga County. March, 1900.)

RAILROADS—NEGLIGENCE—PERSONAL INJURY—EVIDENCE—SETTING ASIDE VERDICT.

Where, in an action against a railway company for damages for a personal injury, plaintiff produced in evidence a map of the crossing where the accident occurred, which greatly exaggerated the sharpness of the curve in defendant's road, thus making it appear more difficult for plaintiff's intestate to have seen the approaching train than it really was, and the evidence of the only eyewitness of the accident, who was called by plaintiff, to show that intestate used proper care in approaching the crossing, was in direct contradiction of a written statement made by him before the trial, and the preponderance of the evidence showed that the intestate could not have failed to see the train in time to avoid it if he had used proper care, a verdict for plaintiff is contrary to the preponderance of the evidence.

Action by Delia Martin, as administratrix, etc., against the New York Central & Hudson River Railroad Company, for damages for a personal injury. There was a verdict for plaintiff, and defendant moved to set it aside. Motion granted.

A. H. Cowie, for the motion.

F. C. Sargent, opposed.

HISCOCK, J. I have decided to grant this motion, being led especially so to do by a review and consideration of the evidence given and offered upon three points.

1. The plaintiff put upon the stand one Bauder, an engineer, who produced a map of the crossing where the accident happened, purporting to show correctly the line of the highway and railroad. He testified upon his direct examination that it was correct. It appeared upon his cross-examination that his map greatly exaggerated the extent and sharpness of the curve above referred to. The exaggeration was in the direction of making it appear more difficult for the intestate to see the approaching train than it really was. This was the point upon which, more than any other, plaintiff's case labored. Another prior map had been prepared for plaintiff by another reputable engineer, which was not produced upon the trial.

It is difficult to believe that the error referred to in the map in evidence was accidental. This map was subsequently excluded from the case. It cannot, therefore, strictly be regarded as a basis for granting this motion. But it is referred to in this connection as throwing light upon the plaintiff's case, and the efforts which were made by her to secure a verdict.

2. The only eyewitness of the accident was a young man named Sherwood. He was sworn by plaintiff to show that her intestate used proper care and caution in approaching the crossing, and incidentally, in that connection, that the intelligence of his movements was not impaired by drunkenness, as was indicated by a large amount of opposing testimony. It would have been impossible, under the rulings of the court, for plaintiff to reach the jury at all except for the assistance of this witness in testifying to the efforts of Mr. Martin to detect the approach of a train. The evidence of this witness upon the stand was uncertain, contradictory, and evasive. I doubt if any careful referee would have accepted it as a sufficient basis for a large judgment. But, in addition to those vices inherent in his testimony tested simply by itself, he had, long before the trial, made a written statement over his own signature, which absolutely and unqualifiedly contradicted his evidence in all of its vital features. He accounts for this contradiction with an explanation which I regard as entirely unreasonable and unworthy of belief. The history of his connection with the case, his appearance upon the stand, and his evidence lead one rather to believe that there is some other explanation of his change.

3. A large amount of evidence was addressed to the specific issue already referred to,—whether the curve in defendant's road so obscured the approaching train that plaintiff's intestate was not to be charged with notice of its coming. Plaintiff swore some witnesses to sustain the affirmative of this issue. They were, in the main at least, two or three persons who lived in the neighborhood, and some former employés of the defendant. As against these persons defendant called a multitude of witnesses who gave evidence to show that intestate could not have failed to see this train in time to avoid it if he had used proper care. These witnesses of defendant were composed of three classes,—employés, persons living in the vicinity of the crossing, and people who made observations at the crossing for the express purpose of determining the facts upon this issue. Outside of the employés, these witnesses were entirely disinterested, and, as a class, very reputable, and entitled to belief. I am forced to the conclusion that in disregarding their testimony, and finding the verdict which it did, the jury either acted arbitrarily, or was influenced by some fundamental error or misconception. I, of course, do not lose sight of the principle that the range of vision attained by a person going to a railroad crossing for the express purpose of making an experiment is not necessarily the measure of what a traveler approaching in the ordinary way is bound to see. Making all due allowance for this, however, it still appears to me that when the jury in this case said, in effect, that the deceased could not have seen this train in time to avoid it, a

conclusion was reached which was opposed to the overwhelming preponderance of evidence. The case, in my judgment, comes clearly within the principles which not only authorize, but direct, the verdict to be set aside. In accordance with decisions of the appellate courts, which control, rather than appeal to, my judgment, the order setting aside the verdict and granting a new trial is upon the condition that defendant pay the costs of the trial, instead of leaving the same to abide the final event of the action.

Ordered accordingly.